1

Honorable Ricardo S. Martinez

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12    CHERYL ENSTAD et al.,

13                     Plaintiffs,

14         vs.

15    PEACEHEALTH,

16                     Defendant.

17

18

19

No.  2:17−cv−01496−RSM

**DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS COMPLAINT
PURSUANT TO RULE 12(B)(6)**

NOTE ON MOTION CALENDAR:
February 9, 2018

Complaint Filed:     October 5, 2017

ORAL ARGUMENT REQUESTED

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
11355 West Olympic
Blvd.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.  ALLEGATIONS OF THE COMPLAINT............................................................ 4

    A.   The Parties............................................................................................. 4

    B.   The Plan ................................................................................................. 4

    C.   Medical Necessity ................................................................................. 5

    D.   Pax's Request for Surgery at Age 16 is Denied..................................... 5

III. THE COURT SHOULD DISMISS THE COMPLAINT ................................... 5

    A.   Legal Standard on Motion to Dismiss Under Rule 12(b)(6)................... 5

    B.   Plaintiffs' Claims Fail Because the Procedure Was Not Medically
        Necessary ............................................................................................... 7

    C.   Plaintiffs' Claim for Violation of ACA § 1557 Fails............................. 8

        1.   Section 1557 Does Not Apply to PeaceHealth .......................... 8

        2.   Section 1557 Exempts Religious Employers From Sex
            Discrimination Claims Inconsistent With Religious Tenets ...... 9

        3.   Section 1557 Does Not Prohibit Discrimination Based Upon
            Transgender Status, and Any Such Protection Must Come From
            Congress Not the Courts ............................................................ 9

        4.   The Complaint Does Not Allege Gender Stereotyping........................... 12

        5.   Cheryl Enstad Lacks Standing Under Section 1557 ................................ 14

        6.   Disparate Impact Claims are Not Permitted Under Title IX.................... 15

        7.   Section 1557 Does Not Prohibit Categorical Exclusions, and the
            Enjoined ACA Regulations Would Not Have Been In Effect When
            Pax Sought His Surgery ............................................................ 16

    D.   Plaintiffs' Claims Under the Washington Law Against Discrimination Fail ....... 18

        1.   Cheryl Enstad's Claim Fails ..................................................... 18

        2.   Pax's WLAD Claim Fails Because He Fails to Allege Conduct
            Governed by WLAD ................................................................. 21

IV.  CONCLUSION ................................................................................................. 23

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

\\\\

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001)............................................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................5, 6

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir.1988)...............................................................................5

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005)............................................................................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................5, 6

*Bereket v. Portfolio Recovery Assocs., LLC*,
No. C17-0812RSMRSM, 2017 WL 4409480 (W.D. Wn. Oct. 4, 2017)...................6

*Bordeaux, Inc. v. Am. Safety Ins. Co.*,
145 Wn. App. 687 (2008) ..................................................................................22

*Briscoe v. Health Care Service Corp.*,
No. 16-CV-10294, 2017 WL 5989727 (N.D. Ill. Dec. 4, 2017).............................15

*Burns v. Rice*,
39 F. Supp. 2d 1350 (M.D. Fla. 1998), *aff'd*, 210 F.3d 393 (11th Cir. 2000),
*cert. denied*, 531 U.S. 814 (2000) ............................................................................17

*Callum v. CVS Health Corp.*,
137 F. Supp. 3d 817 (D.S.C. 2015)......................................................................15

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011)...............................................................................5

*Creed v. Family Express Corp.*,
2007 WL 2265630 (N.D. Ind. 2007)...................................................................14

*Cruz v. Zucker*,
195 F. Supp. 3d 554, 563 (S.D.N.Y. 2016)..........................................................16

*Donelson v. Providence Health & Servs. - Wn.*,
823 F. Supp. 2d 1179 (E.D. Wn. 2011) ..............................................................20

*EEOC v. RG & GR Harris Funeral Homes, Inc.*,
100 F. Supp. 3d 594, 598 (E.D. Mich. 2015), *appeal from summary judgment
order filed* October 13, 2016...............................................................................13

*Etsitty v. Utah Transit Authority*,
502 F.3d 1215 (10th Cir. 2007).....................................................................10, 14

*Eure v. Sage Corp.*,
61 F. Supp. 3d 651 (W.D. Tex. 2014)..................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*Farnam v CRISTA Ministries*,
    116 Wn.2d 659, 807 P.2d 830 (1991) ....................................................................21

*Franciscan Alliance., Inc. v. Burwell*,
    227 F. Supp. 3d 660 (N.D. Tex. 2016)...........................................................2, 15, 17

*Franciscan Alliance, Inc. v. Price*,
    2017 WL 3616652 (N.D. Tex. July 10, 2017) ..........................................................3

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
    822 F.3d 709 (4th Cir. 2016), *cert. granted in part*, 137 S. Ct. 369 (2016) ...................2, 7, 16

*N.L.R.B. v. Catholic Bishop of Chicago*,
    440 U.S. 490 (1979)...................................................................................................9

*Galbraith v. TAPCO Credit Union*,
    88 Wn. App. 939 (1997) ..........................................................................................19

*Glenn v. Brumby*,
    663 F.3d 1312 (11th Cir. 2011)................................................................................13

*Hazen v. Catholic Credit Union*,
    37 Wn. App. 502, 681 P.2d 856 (1984) ...................................................................21

*Hegwine v. Longview Fibre Co.*,
    162 Wn. 2d 340 (2007) ............................................................................................23

*Hinton v. Virginia Union U.*,
    185 F. Supp. 3d 807, 817 (E.D. Va. 2016)...............................................................10

*Hoe Xuan Nguyen v. ING Fin. Advisers LLC*,
    No. C04-1310RSM, 2006 WL 1075216 (W.D. Wn. Apr. 21, 2006), *aff'd sub nom. Hoe Xuan Nguyen v. N. Life Ins.*, 234 F. App'x 526 (9th Cir. 2007) ...............19

*Hosp. Auth. of Houston Cty. v. Bohannon*,
    272 Ga. App. 96, 611 S.E.2d 663 (Ga. Ct. App. 2005) .............................................8

*In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*,
    No. 09-2076RSL, 2010 WL 2640249 (W.D. Wn. June 25, 2010) .............................6

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) .......................................15

*Johnson v. Fresh Mark, Inc.*,
    337 F. Supp. 2d 996 (N.D. Ohio 2003), *aff'd*, 98 F. App'x 461 (6th Cir. 2004).....................14

*Johnston v. Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ.*,
    97 F. Supp. 3d 657, 674 (W.D. Pa. 2015)................................................9, 10, 12, 13

*Kastl v. Maricopa County Comm. College Dist.*,
    325 Fed. Appx. 492 (9th Cir. 2009) .........................................................................13

*King v. Rumbaugh*,
    No. C17-00031-RSM, 2017 WL 1283501 (W.D. Wn. Apr. 6, 2017) ........................6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

\\\\

**TABLE OF AUTHORITIES**
(continued)

Page

*Krauel v. Iowa Methodist Med. Ctr.*,
   95 F.3d 674 (8th Cir. 1996) ........................................................................................16

*Lopez v. Regents of Univ. of Cal.*,
   5 F. Supp. 3d 1106 (N.D. Cal. 2013) .........................................................................14

*Mario v. P & C Food Markets, Inc.*,
   313 F.3d 758 (2d Cir. 2002) .......................................................................................15

*Marquis v. City of Spokane*,
   130 Wn.2d 97 (Wn. 1996) ..........................................................................................23

*Matter v. Washington Dep't of Corr.*,
   No. 13-CV-05213 BJR-KLS, 2014 WL 4449925 (W.D. Wn. Sept. 10, 2014) ...................4, 21

*Mills v. PeaceHealth*,
   31 F. Supp. 3d 1099 (D. Or. 2014) ............................................................................21

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
   12 F. Supp. 3d 1341, 1351 (W.D. Wn. 2014) .............................................................6

*Mitchell v. Helms*,
   530 U.S. 793 (2000) .....................................................................................................9

*Mony Life Ins. Co. v. Marzocchi*,
   857 F. Supp. 2d 993 (E.D. Cal. 2012) ........................................................................6

*Mowery v. Escambia County Util. Auth.*,
   2006 WL 327965 (N.D. Fla. Feb. 10, 2006) .............................................................11

*Ockletree v. Franciscan Health System*,
   179 Wn. 2d 769 (2014) .....................................................................................3, 20, 21

*Oiler v. Winn-Dixie La., Inc.*,
   2002 WL 31098541 (E.D. La. Sept. 16, 2002) .........................................................11

*Prescott v. Rady Children's Hosp.-San Diego*,
   265 F. Supp. 3d 1090, 2017 WL 4310756 (S.D. Cal. 2017) .................................13, 14

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1998) ...................................................................................................12

*Providence Health & Servs.-Oregon v. Boulder Admin. Servs. Inc*,
   No. C16-745 TSZ, 2016 WL 8222213 (W.D. Wn. Oct. 11, 2016) ............................1

*Providence Health & Servs.-Oregon v. Boulder Admin. Servs. Inc*,
   No. C16-745 TSZ, 2016 WL 8222213 (W.D. Wn. Oct. 11, 2016) ............................7

*Rizzuti v. Basin Travel Serv. of Othello, Inc.*,
   125 Wn. App. 602 (2005) .............................................................................................8

*Rosa v. Park West Bank & Trust Co.*,
   214 F.3d 213 (1st Cir. 2000) .....................................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page

*Rumble v. Fairview Health Servs.*,
No. 14-CV-2037 SRN/FLN, 2015 WL 1197415 (D. Minn. Mar. 16, 2015) ...........................15

*Rumble v. Fairview Health Servs.*,
No. 14-CV-2037, 2017 WL 401940 (D. Minn. Jan. 30, 2017)................................15

*Schwenk v. Hartford,*
204 F.3d 1187 (9th Cir. 2000)................................................13

*Se. Pennsylvania Transp. Auth. v. Gilead Scis., Inc.*,
102 F. Supp. 3d 688 (E.D. Pa. 2015) ...........................15

*Sedlacek v. Hillis,*
145 Wash. 2d 379 (2001)..............................................3, 18, 19

*Simonton v. Runyon,*
232 F.3d 33 (2d Cir. 2000)..............................................11

*Smith v. City of Salem, Ohio,*
378 F.3d 566 (6th Cir. 2004)..........................................13

*Tovar v. Essentia Health,*
857 F.3d 771 (8th Cir. 2017)..........................................3, 14, 19

*U.S. v. Ritchie,*
342 F.3d 903 (9th Cir. 2003).........................................7

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003)........................................7

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,*
858 F.3d 1034 (7th Cir. 2017)........................................2, 13

*Wood v. City of San Diego,*
678 F.3d 1075 (9th Cir. 2012)........................................15

*Yakima First Baptist Homes, Inc. v. Gray*,
82 Wn.2d 295 (1973) ...............................................20

**STATUTES**

20 U.S.C. 1681 ................................................................9

20 U.S.C. § 1681(a) .......................................................10

20 U.S.C. § 1681(a)(3) ...................................................9

29 U.S.C. § 1001 *et seq.*...............................................1

29 U.S.C. §§ 1002(33) ..................................................22

29 U.S.C. § 1003(b)(2)..................................................1

42 U.S.C. § 18116 ................................................ passim

Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.) .............................9

**TABLE OF AUTHORITIES**
(continued)

Page

Civil Rights Act of 1964 ...................................................................................11

Title VII of the Civil Rights Act of 1964 ................................................. passim

Equal Credit Opportunity Act ..........................................................................13

RCW 49.60..................................................................................................19, 20

RCW 49.60.030(1).....................................................................................19, 23

RCW 49.60.040(11)..........................................................................................20

RCW 49.60.175..................................................................................................22

RCW 49.60.200..................................................................................................22

RCW 49.60.215.........................................................................................19, 22

RCW 49.60.222..................................................................................................22

RCW 49.60.227..................................................................................................22

RCW § 49.60.040(11) .........................................................................................3

RCW § 49.060.040(25) .....................................................................................19

RCW § 49.060.040(26) ................................................................................3, 19

RCW § 49.60.180(3) ...............................................................................3, 18, 19

Wn. Rev. Code Ann. § 48.01.040 .....................................................................22

WN. REV. CODE § 49.60 et seq. ........................................................................1

**OTHER AUTHORITIES**

45 C.F.R. § 92.1 ................................................................................................17

45 C.F.R. § 92.207(b)(4) ..................................................................................16

81 Fed. Reg. 31376 ...........................................................................................17

81 Fed. Reg. at 31378 .......................................................................................17

81 Fed. Reg. 31468 (May 18, 2016) (codified at 45 C.F.R. § 92.4) ....... passim

H.R. 2015 (2007), H.R. 3685 (2007), H.R. 3017 (2009), H.R 1397 (2011), S. 811
(2011), H.R. 1755 (2013)..............................................................................11

H.R. 2282 (2017) ..............................................................................................11

H.R. 3185 (2015) ..............................................................................................11

http://www.catholicnews.com/services/englishnews/2016/gay-transgender-people-
deserve-pastoral-care-pope-says.cfm ..............................................................2

https://perma.cc/48SQ-9KAU] .........................................................................17

https://w2.vatican.va/content/dam/francesco/pdf/apost_exhortations/documents/pa
pa-francesco_esortazione-ap_20160319_amoris-laetitia_en.pdf....................2

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

\\\\

**TABLE OF AUTHORITIES**
**(continued)**

Page

https://www.aclu.org/know-your-rights/transgender-people-and-law ............................................10

https://www.aclu-wa.org/docs/rights-transgender-people-washington-state. First.........................22

https://www.hhs.gov/sites/default/files/static/dab/decisions/board-
    decisions/2014/dab2576.pdf ..................................................................................................10

https://www.insurance.wa.gov/who-contact-issues-your-employer-health-plan...........................22

https://www.justice.gov/ag/page/file/1006981/download ............................................................12

https://www.peacehealth.org/our-catholic-identity...................................................................20

Linda A. Bergthold, *Medical Necessity: Do We Need It?* ............................................................16

S. 1858 (2015).............................................................................................................................11

Wash. Admin. Code §§ 162-32-010 ..........................................................................................19

Wash. Admin. Code § 162-32-030 ..............................................................................................3

WIS. DEP'T OF EMP. TR. FUNDS, Gender Reassignment Exclusion Reinstated
    (Feb. 2, 2017), http://etf.wi.gov/news/ht_20170201.htm .........................................................17

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

I.     **INTRODUCTION**

Plaintiffs' claims for sex discrimination under Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C § 18116 ("Section 1557") and the Washington Law Against Discrimination ("WLAD"), WN. REV. CODE ("RCW") § 49.60 et seq., fail for multiple reasons.  These defects cannot be cured by amendment.  Accordingly, the Court should dismiss the Complaint without leave to amend.

Plaintiff Pax Enstad ("Pax") alleges that he is a transgender boy, which means that he has a male gender identity even though the sex assigned to him at birth was female.  (Complaint, ¶ 3.) His mother, plaintiff Cheryl Enstad ("Cheryl"), was an employee of defendant PeaceHealth.  *Id*. Plaintiffs' allege that PeaceHealth is "a Catholic healthcare organization" which provided health coverage to Cheryl and Pax through a self-funded health plan that is operated as a church plan (the "Plan") and, therefore, is not subject to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA") (*Id.*, at ¶¶ 2-3; Exh. A, p. 9; 29 U.S.C. § 1003(b)(2).).  In September 2016, when Pax was 16 years old, the Plan denied Pax's request that it cover the cost of a mastectomy in connection with his transition from a girl to a boy.

As a threshold matter, the Complaint and its exhibits establish that the mastectomy sought by Pax was, by definition, not medically necessary because he was 16 years old at the time. Under any standard, including the World Professional Association for Transgender Health ("WPATH") Standards of Care cited by Plaintiffs and the Aetna and Regence medical policies attached as exhibits to the Complaint, Pax was too young to have irreversible surgery.[1]  As a result, the Plan did not discriminate as Plaintiffs allege by covering medically necessary services for non-transgender beneficiaries while denying medically necessary services for transgender beneficiaries.  (Complaint, ¶¶ 68-69, 79, 91).  Indeed, it would have been inappropriate for the self-funded PeaceHealth Plan to pay for such services at the expense of medically necessary services needed by other plan participants.[2]  There was no discrimination.

---

[1] *See Providence Health & Servs.-Oregon v. Boulder Admin. Servs. Inc*, No. C16-745 TSZ, 2016 WL 8222213, at *2 (W.D. Wn. Oct. 11, 2016) ("When the complaint and the incorporated documents conflict, the court is not required to accept as true allegations that contradict exhibits attached to the Complaint.") (internal quotation omitted).

[2] Gender transition surgery is not "medically necessary" for patients under 18 years of age.  *See*

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17–cv–01496–RSM                                    1                    MANATT, PHELPS &
                                                                              PHILLIPS, LLP
                                                                              11355 WEST OLYMPIC
                                                                              BLVD.

1    Plaintiffs' discrimination claims fail for multiple other reasons.  Section 1557 incorporates

2    the anti-discrimination provisions in Title IX of the Education Amendments of 1972, 20 U.S.C.

3    § 1681 *et seq.*  This includes Title IX's religious exemptions.  *Franciscan Alliance., Inc. v.*

4    *Burwell*, 227 F. Supp. 3d 660, 690 (N.D. Tex. 2016) ("a religious organization refusing to act

5    inconsistent with its religious tenets on the basis of sex does not discriminate on the ground

6    prohibited by Title IX").  Because Plaintiffs admit that PeaceHealth is a "Catholic healthcare

7    organization", and that the alleged categorical exclusion in the Plan is "based on [PeaceHealth's]

8    moral disapproval of . . . gender transition," Plaintiffs have pled facts which establish the

9    application of the religious exemption to Title IX.  (Complaint, ¶¶ 2 and 82).[3]

10    In addition, Title IX prohibits discrimination against men and women, but does not

11    prohibit discrimination based upon gender identity.  Neither a categorical coverage exclusion of

12    transgender services that applies to all employees, nor the application of universally accepted

13    medical necessity criteria, violate Title IX.  Courts have repeatedly recognized that only Congress

14    can add new protected classifications, and it has repeatedly declined to do so.

15    In May 2016, the Office of Civil Rights (OCR) of the Department of Health and Human

16    Services promulgated a new regulation under Section 1557 of the ACA that sought to prohibit the

17    categorical exclusion of coverage of all gender transition services.  81 Fed. Reg. 31468 (May 18,

18    2016) (codified at 45 C.F.R. § 92.4) ("ACA Regulations").  However, the ACA Regulations were

19

20    *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 715 (4th Cir.), *cert. granted in part*, 137 S. Ct. 369 (2016), *and vacated and remanded*, 137 S. Ct. 1239 (2017) (WPATH Standards of Care "do not permit sex reassignment surgery for persons who are under the legal

21    age of majority.") (internal citations omitted); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1041 (7th Cir. 2017) (gender transition surgery is

22    "prohibited for someone under 18 years of age"); *see also* Complaint, Ex. B, p. 3; Ex. C, p. 1.).
[3] Transgender issues raise religious and moral concerns under Catholic religious doctrine

23    requiring continuing discernment.  Pope Francis has stated that educational programs and legislative enactments that promote a personal identity separated from the biological difference

24    between male and female and that make human identity a personal choice raise concerns for the Catholic church.  Amoris Laetitia of the Holy Father Francis on Love in the Family, pp. 44-45.

25    https://w2.vatican.va/content/dam/francesco/pdf/apost_exhortations/documents/papa-francesco_esortazione-ap_20160319_amoris-laetitia_en.pdf.  Pope Francis has also stated that

26    transgender issues raise a moral and human problem that "must be resolved the best one can – always with the mercy of God, with the truth" and "always with an open heart."

27    http://www.catholicnews.com/services/englishnews/2016/gay-transgender-people-deserve-pastoral-care-pope-says.cfm.

28

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No.  2:17–cv–01496–RSM

2

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1    enjoined nationwide on December 31, 2016.  *See Franciscan All.*, 227 F. Supp. 3d at 695.

2    Therefore, the regulations cannot be enforced by the Plaintiffs.[4]  Moreover, the defunct ACA

3    Regulations in fact support PeaceHealth, not Plaintiffs.  Under the enjoined regulations, changes

4    to plan design – defined to include "covered benefits, benefits limitations or restrictions" such as

5    that alleged by Plaintiffs – need not have been implemented until the first plan year beginning

6    after January 1, 2017.  Accordingly, even if the ACA Regulations applied, PeaceHealth would not

7    have been required to modify its Plan at the time Pax sought coverage for a mastectomy in 2016.

8            Plaintiffs' claims under state law fail as well.  Cheryl's WLAD claim fails because Cheryl

9    is not transgender.  RCW § 49.060.040(26) (" '[G]ender expression or identity' means having or

10   being perceived as having a gender identity . . . different from that traditionally associated with

11   the sex assigned *to that person* at birth.") (Emphasis added); Wash. Admin. Code § 162-32-030

12   ("Employee benefits provided in whole or in part by an employer must be consistent between all

13   employees and equal for all employees, regardless of *the employee's* sexual orientation or gender

14   expression or gender identity.") (Emphasis added); *see also Sedlacek v. Hillis*, 145 Wash. 2d 379,

15   391 (2001) ("the Legislature has not extended the WLAD to include a prohibition against

16   association discrimination"); *see also Tovar v. Essentia Health*, 857 F.3d 771, 775 (8th Cir.

17   2017).  Cheryl cannot state an employment claim under WLAD based upon the allegation that her

18   son is transgender.

19           Cheryl's claim under RCW § 49.60.180(3) also fails because the WLAD does not apply to

20   non-profit religious organizations.  *See* RCW § 49.60.040(11); *see Ockletree v. Franciscan*

21   *Health System*, 179 Wn. 2d 769, 806 (2014) (religious organization exemption applies where the

22   alleged wrongful conduct relates to the organization's religious beliefs).  Here, Plaintiffs admit

23   that PeaceHealth is a non-profit "Catholic healthcare organization," and allege that PeaceHealth's

24   exclusion of gender transition services is "based on [its] moral disapproval" of gender transition.

25   _____

26   [4] The federal government has also indicated that it will not enforce the ACA Regulations, and it is
     engaged in drafting a new rule, which will be subject to notice and comment.  *See* RJN, Exh 1.
27   More recently, the court granted a stay of the proceedings indefinitely upon HHS' request and
     indication to the court of its "desire to reassess the reasonableness, necessity, and efficacy of the
28   [rule] challenged in the case." *Franciscan Alliance, Inc. v. Price*, 2017 WL 3616652, at *5 (N.D.
     Tex. July 10, 2017).

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS                                    3
No.  2:17–cv–01496–RSM

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1   (Complaint, ¶¶ 2, 24, 82.)  Thus, the religious exemption applies to Cheryl's claim.

2          Finally, Pax's WLAD claim also fails because Pax does not allege a claim that falls within

3   one of the categories protected by the WLAD.  *Matter v. Washington Dep't of Corr.*, No. 13-CV-

4   05213 BJR-KLS, 2014 WL 4449925, at *6-7 (W.D. Wn. Sept. 10, 2014) (dismissing claim

5   because the "WLAD does not present a free standing claim for allegations of discrimination" and

6   plaintiff had failed to allege one of specifically prohibited unfair practices).  Pax's attempt to

7   shoehorn his claims into prohibitions on unfair practices related to personal service contracts

8   entered into by independent contractors or insurance fail because health coverage under the

9   PeaceHealth Plan is neither.  In addition, as discussed above, Pax's allegations of discrimination

10  fail because the mastectomy was not medically necessary due to his age.  Therefore, there was no

11  discrimination.  (Complaint, ¶ 91) (alleging Pax purportedly was denied coverage for medically

12  necessary treatment while non-transgender Plan participants were provided coverage for such

13  services).

14  **II.     ALLEGATIONS OF THE COMPLAINT.**

15      **A.     The Parties.**

16          Pax alleges that he is a boy who is transgender, meaning that "he has a male gender

17  identity even though the sex assigned to him at birth was female."  (Compl. ¶ 4.)  His mother,

18  Cheryl, alleges that she was employed as a social worker at PeaceHealth St. Joseph Medical

19  Center for over twenty years.  (Compl. ¶ 3.)  "PeaceHealth is a Catholic healthcare organization

20  that operates 70 sites in Washington, Oregon, and Alaska."  (*Id.*, ¶ 2.).

21      **B.     The Plan**

22          PeaceHealth provides health benefits to its employees through the Plan which is self-

23  funded.  (*Id.*)  Cheryl and Pax had health care coverage through the Plan, which is a "church

24  plan" and is not subject to ERISA.  (Complaint, ¶¶ 39-40 and Exh. A, p. 9).  According to

25  Plaintiffs, the Plan categorically excludes coverage for gender transition procedures and related

26  services.  (*Id.* ¶ 42; Ex. A, 119, 122).  The Plan also excludes procedures that are "not medically

27  necessary."  (*Id.*, ¶ 41; Ex. A, pp. 122, 130.)  In 2016, the Plan was administered by Healthcare

28  Management Administrators, Inc. ("HMA"), a subsidiary of Regence Insurance.  (*Id.* ¶¶ 44.)  On

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17-cv-01496-RSM

4

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1   or around January 1, 2017, Meritain Health, a subsidiary of Aetna Inc., became the Plan

2   administrator.  (*Id.*, 47.)

3       **C.**    **Medical Necessity.**

4       According to Plaintiffs, "Pax's chest-reconstruction surgery would have been covered as

5   medically necessary treatment for gender dysphoria under both "Regence's Medical Policy

6   Manual and Aetna Policy 0615."  (Complaint, ¶ 54; Exs. B and C.)  That allegation is

7   demonstrably false due to Pax's age.  The Regence Insurance "Medical Policy Manual," which

8   incorporates the WPATH Standards, provides coverage only for "medically necessary" treatments

9   for gender dysphoria.  The Regence policy regarding transgender services (the "Regence Policy")

10  clearly states that the patient must be at least 18 years of age.  (*Id.*, ¶¶ 29 and 45; Ex. B, p. 3.)

11  Similarly, Aetna Policy 0615 also requires the patient to be the "[a]ge of majority (18 years of age

12  or older)."  (*Id.,* Ex. C.)

13      By Plaintiffs' own admission, Pax was not 18 years of age or older.  Therefore, the

14  mastectomy was not medically necessary.

15      **D.**    **Pax's Request for Surgery at Age 16 is Denied.**

16      In 2016, when Pax turned 16 years old, he sought chest reconstruction surgery.  (*Id.*, ¶ 53.)

17  In September 2016, the request was denied and Pax was informed that the 2016 Plan did not have

18  coverage for transgender services.  (*Id.*, ¶ 56.)

19  **III.    THE COURT SHOULD DISMISS THE COMPLAINT.**

20      **A.**    **Legal Standard on Motion to Dismiss Under Rule 12(b)(6).**

21      A complaint that fails to state a claim upon which relief may be granted is subject to

22  dismissal under Federal Rule of Civil Procedure 12(b)(6).  A dismissal under Rule 12(b)(6) may

23  be based on the "lack of a cognizable legal theory or [on] the absence of sufficient facts alleged

24  under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

25  2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)).

26      A complaint cannot survive a Rule 12(b)(6) motion unless it "contain[s] sufficient factual

27  matter . . .  to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

28  662, 678 (2009) (quoting  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS                                    5
No. 2:17−cv−01496−RSM

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1   complaint must allege more than "an unadorned, the-defendant-unlawfully-harmed-me

2   accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

3   action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Determining whether a

4   complaint will survive a motion to dismiss for failure to state a claim is a 'context-specific task

5   that requires the reviewing court to draw on its judicial experience and common sense.'" *Mony*

6   *Life Ins. Co. v. Marzocchi*, 857 F. Supp. 2d 993, 995 (E.D. Cal. 2012) (quoting *Iqbal*, 556 U.S. at

7   679).

8       "In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as

9   true, and makes all inferences in the light most favorable to the non-moving party." *King v.*

10  *Rumbaugh*, No. C17-00031-RSM, 2017 WL 1283501, at *2 (W.D. Wn. Apr. 6, 2017).

11  "However, the court is not required to accept as true a "legal conclusion couched as a factual

12  allegation." *King*, 2017 WL 1283501, at *2. "Although an allegation of knowledge or intent is

13  logically an allegation of fact regarding defendant's state of mind, *Iqbal* suggests that such

14  allegations should be disregarded if not supported by additional, more concrete, factual

15  allegations." *In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, No. 09-2076RSL,

16  2010 WL 2640249, at *5 (W.D. Wn. June 25, 2010).

17      "In order to determine whether a claim rises above the speculative and attains plausibility,

18  courts must consider not only the pleadings and documents that are an integral part of the

19  complaint, but also any 'obvious alternative explanation' for defendant's conduct based on the

20  court's 'judicial experience and common sense.'" *Id.* (citing *Twombly*, 550 U.S. at 567 and *Iqbal*,

21  129 S. Ct. at 1950). Where the complaint has not alleged "enough facts to state a claim to relief

22  that is plausible on its face," a plaintiff has "not nudged [his] claims across the line from

23  conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570;

24  *Bereket v. Portfolio Recovery Assocs., LLC*, No. C17-0812RSMRSM, 2017 WL 4409480, at *2

25  (W.D. Wn. Oct. 4, 2017).

26      "It is well settled that documents attached to or incorporated by reference, such as

27  Plaintiffs' own exhibits to the Complaint, are properly before the Court for consideration on a

28  Rule 12(b)(6) motion." *Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1351

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17–cv–01496–RSM

6

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1   (W.D. Wn. 2014), *citing U.S. v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).  "When the complaint

2   and the incorporated documents conflict, the court is not required to accept as true allegations that

3   contradict exhibits attached to the Complaint."  *Providence Health & Servs.-Oregon,* 2016 WL

4   8222213, at *2 (internal quotation omitted); *see also Warren v. Fox Family Worldwide, Inc*., 328

5   F.3d 1136, 1139 (9th Cir. 2003).

6   **B.   Plaintiffs' Claims Fail Because the Procedure Was Not Medically Necessary.**

7   Plaintiffs' discrimination claims hinge on their incorrect allegation that the Plan provides

8   medically necessary care for non-transgender beneficiaries but denies such care to transgender

9   beneficiaries.  Plaintiffs have not stated and cannot state a claim under federal or state law based

10   on the coverage provided to Pax because Complaint and the exhibits thereto confirm that the

11   surgery requested by Pax was not medically necessary as he was only 16 years old.

12   Under the WPATH Standards of Care, which "have been recognized as the authoritative

13   standards," The Regence Policy, and the Aetna Policy all require that the patient be at least 18

14   years of age.  (Complaint, ¶¶ 29, 45, 48; Ex. B, p. 3, Ex. C, p. 1)  *See Grimm* 822 F.3d 709, *cert.*

15   *granted in part*, 137 S. Ct. 369, *and vacated and remanded*, 137 S. Ct. 1239 ("The WPATH

16   Standards of Care do not permit sex reassignment surgery for persons who are under the legal age

17   of majority.").  Plaintiffs' Complaint admits that Pax was 16 years old when they requested

18   coverage of the mastectomy under the Plan.  Accordingly, the surgery was not medically

19   necessary.  (Complaint, ¶ 53; Ex. B, p. 3, II(A)(1).)

20   Moreover, the Complaint does not allege that Pax met at least two of the other

21   requirements to establish that the mastectomy was medically necessary.  These include "twelve

22   months of living in a gender role that is congruent with the patient's gender identity" and

23   "documentation of continuous hormonal therapy for at least 12 months."  (*Id.*, Ex. B, p. 3,

24   II(A)(4) and (5).)  Plaintiffs merely allege that Pax was "prescribed testosterone hormone

25   therapy," but they do not allege that he actually took hormone therapy.  (Complaint, ¶ 9.)  The

26   fact that an adolescent was prescribed – by refused to take – a course of hormone therapy would

27   not satisfy the requirement.   Based upon the facts and admissions plead by Pax as well as the

28   documents attached to the Complaint, Pax did not meet the medical necessity standards that he

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No.  2:17−cv−01496−RSM

7

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

contends apply.

In light of these insurmountable problems, Plaintiffs contend that the Plan's purported categorical exclusion of services related to gender transition constitutes discrimination. Specifically, Plaintiffs contend that the "only function of these categorical exclusions is to exclude coverage for medically necessary transition-related care that would otherwise have been covered." (Complaint, ¶ 42.) However, that claim also fails because the mastectomy sought by Pax would not otherwise have been covered. Pax would have been denied coverage in any event because the procedure was not medically necessary in that Pax does not allege that he met the requirements for medically necessary surgery. *Cf. Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 125 Wn. App. 602, 614 (2005) ("[W]hatever [defendant] stated as the reason for denying coverage, the fact remains that the blanket policy [excluded coverage for the accident]."); *Hosp. Auth. of Houston Cty. v. Bohannon*, 272 Ga. App. 96, 107, 611 S.E.2d 663, 672 (2005) ("the fact that HHC or Blue Cross may have initially denied coverage for the wrong reason provides no basis for finding that HHC was estopped to deny clearly excluded coverage").

PeaceHealth's third party administrators fully adhered to industry practices and referenced the WPATH standards in their policies. All of the standards require the patient to be at least 18 years old, and Plaintiffs admit that Pax sought the surgery at age 16. He facially did not meet either WPATH's, Regence's, or Aetna's "medical necessity" criteria. As a result, the discrimination claims fail as a matter of law.

**C.      Plaintiffs' Claim for Violation of ACA § 1557 Fails.**

**1.   Section 1557 Does Not Apply to PeaceHealth.**

Section 1557 prohibits discrimination in any "health program or activity." 42 U.S.C. § 18116. "Health program or activity" is not defined in the statute. That term was defined in the ACA Regulations to include hospitals and encompass employee benefits provided by hospitals, but the ACA Regulations were enjoined precisely because they exceeded the scope Section 1557. *See Franciscan All.,* 227 F. Supp. 3d at 689; 45 C.F.R. §§ 92.4 (definition of "covered entity"); 92.208(a) (applying ACA Regulations to hospital administration of employee health benefit plans). By its terms Section 1557 does not apply to a self-funded health plan maintained as a

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17−cv−01496−RSM

8

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

church plan.  The only basis for applying Section 1557 to the Plan was the ACA Regulations, but those regulations have been enjoined and abandoned.

### 2. Section 1557 Exempts Religious Employers From Sex Discrimination Claims Inconsistent With Religious Tenets.

Section 1557 prohibits discrimination on the basis of sex by incorporating the provisions of Title IX of the Education Amendments in 1972.[5]  However, Section 1557 also incorporates Title IX's religious exemptions.  *See* 20 U.S.C. § 1681(a)(3).  "Title IX prohibits discrimination on the basis of sex, but exempts from this prohibition entities controlled by a religious organization when the proscription would be inconsistent with its religious tenets."  *Franciscan All.*, 227 F. Supp. 3d at 690 (N.D. Tex. 2016) ("a religious organization refusing to act inconsistent with its religious tenets on the basis of sex does not discriminate on the ground prohibited by Title IX").  Because Plaintiffs admit both that PeaceHealth is a Catholic religious organization, and that the alleged exclusion of transgender services is "based on [PeaceHealth's] moral disapproval of . . . gender transition," Plaintiffs have failed to state a claim as a matter of law due to the exemption for religious employers.[6]  (Complaint, ¶¶ 2 and 82).

### 3. Section 1557 Does Not Prohibit Discrimination Based Upon Transgender Status, and Any Such Protection Must Come From Congress Not the Courts.

#### a. Title IX Does Not Prohibit Discrimination Based Upon Transgender Status.

"Title IX does not prohibit discrimination on the basis of transgender itself because transgender is not a protected characteristic under the statute."[7]  *Johnston v. Univ. of Pittsburgh*

---

[5] Section 1557 of the ACA provides: "[A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity . . . ." 42 U.S.C. § 18116(a).

[6] A court cannot constitutionally determine whether an organization is religious by questioning its motives, beliefs, or mission.  *See, e.g., N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979) (declaring unconstitutional agency practice of examining whether a school is "completely religious" or merely "religiously associated" to determine jurisdiction); *Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality opinion) ("it is well established, in numerous other contexts, that courts should refrain from trolling through a person's religious beliefs")

[7] Title IX provides, with certain exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No.  2:17−cv−01496−RSM

9

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1    *of the Commonwealth Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 674 (W.D. Pa. 2015).

2        In *Johnston*, the Court held that:

3        Title IX's language does not provide a basis for a transgender status claim. On a
4        plain reading of the statute, the term "on the basis of sex" in Title IX means
         nothing more than male and female, under the traditional binary conception of sex
5        consistent with one's birth or biological sex. The exclusion of gender identity from
         the language of Title IX is not an issue for this Court to remedy. It is within the
6        province of Congress—and not this Court—to   identify those classifications
         which are statutorily prohibited.
7        …
8        This Court's narrow view of the meaning of the statutory term "sex" is also
         supported by the legislative history  . . . Congress's purpose in enacting Title IX
9        was to establish equal educational opportunities for women and men in education.
         97 F. Supp. 3d at 676-77.

10   Moreover, after the enactment of Section 1557 in 2010, Medicare continued to categorically

11   exclude transgender surgery in a National Coverage Determination until May 2014, when it

12   changed its policy for reasons having nothing to do with Section 1557.[8]

13                      b.    **Only Congress Can Establish "Transgender" as a Protected**
14                            **Classification.**

15       Only Congress may establish transgender status as a protected classification, and the

16   legislative history makes clear that Congress has not done so.[9] *See Etsitty v. Utah Transit*

17   *Authority*, 502 F.3d 1215, 1222 n.2 (10th Cir. 2007) ("If transsexuals are to receive legal

18   protection apart from their status as male or female, . . . *such protection must come from Congress*

19   *and not the courts*.") (emphasis added); *Johnston*, 97 F. Supp. 3d at 676-77 ("It is within the

20   province of Congress—and not this Court—to  identify those classifications which are statutorily

21   prohibited [under the statute]"); *Hinton v. Virginia Union U.*, 185 F. Supp. 3d 807, 817 (E.D. Va.

22   2016) ("Title VII is a creation of Congress and, if Congress is so inclined, it can either amend

23   assistance . . . ."  20 U.S.C. § 1681(a).
     [8] https://www.hhs.gov/sites/default/files/static/dab/decisions/board-decisions/2014/dab2576.pdf
24   [9]  The ACLU itself has noted that federal law (prior to the ACA Regulations discussed below) did
     not clearly prohibit discrimination based on transgender status—while also acknowledging that
25   federal law specifically excludes transgender status as an actionable basis for a disability
     discrimination claim.  In response to the question "[d]o federal laws protect transgender people
26   against housing and employment discrimination?," the ACLU responds on its website:  "*So far,
     Congress has been slow to pass laws that clearly protect people against discrimination based on
27   gender identity*. . . . Federal laws that prohibit disability discrimination specifically exclude
     coverage for gender dysphoria**,** as do some state disability laws . . . ."https://www.aclu.org/know-
28   your-rights/transgender-people-and-law (emphasis added).

1   Title VII to provide a claim for sexual orientation discrimination or leave Title VII as presently

2   written. It is not the province of unelected jurists to effect such an amendment."); *Simonton v.*

3   *Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) ("Congress's refusal to expand the reach of Title VII is

4   strong evidence of congressional intent in the face of consistent judicial decisions refusing to

5   interpret 'sex' to include sexual orientation").  Asking a court to read "because of . . . sex"

6   broadly to sweep in other characteristics that arguably relate to sex (such as transgender status or

7   sexual orientation) is asking the court to legislate where Congress has refused to do so.  *See*

8   *Mowery v. Escambia County Util. Auth.*, 2006 WL 327965, at *9 (N.D. Fla. Feb. 10, 2006)

9   (noting that some "commentators emphasize that the distinction between sex and sexual

10  orientation is, at times, logically meaningless.  This Court expresses no opinion on the merits of

11  such views, for the distinction between sex and sexual orientation is not meaningless to *Congress.*

12  In fact, Congress has specifically and repeatedly rejected legislation that would have extended

13  Title VII to protect an individual from discrimination based on his or her sexual orientation.")

14  (emphasis in original; citations omitted); *Oiler v. Winn-Dixie La., Inc*., 2002 WL 31098541, at *4

15  (E.D. La. Sept. 16, 2002) ("From 1981 through 2001, 31 proposed bills have been introduced in

16  the United States Senate and the House of Representatives which have attempted to amend Title

17  VII and prohibit employment discrimination on the basis of affectional or sexual orientation.

18  None have passed.").

19          Most notably, 22 different versions of a proposed bill entitled the Employment Non-

20  Discrimination Act (ENDA) have been introduced, at least one in nearly every Congress since

21  1994, with the specific purpose of prohibiting employment discrimination on the basis of sexual

22  orientation or gender identity.  *See, e.g.*, H.R. 2015 (2007), H.R. 3685 (2007), H.R. 3017 (2009),

23  H.R 1397 (2011), S. 811 (2011), H.R. 1755 (2013).  Of the 22 proposed ENDA bills, Congress

24  did not enact a single one.  And the "Equality Act," which would explicitly extend the Civil

25  Rights Act of 1964, including Title VII, to cover gender identity, has never made it out of

26  Committee.  *See, e.g.,* H.R. 3185 (2015); S. 1858 (2015); H.R. 2282 (2017); S.B. 1006 (2017).

27  The enjoined ACA Regulations purported to define discrimination based on "sex" to include *both*

28

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17−cv−01496−RSM

11

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1    "sex stereotyping, and gender identity," implicitly recognizing a distinction between the two. [10]

2    45 C.F.R. §92.4.  However, the Department of Justice recently concluded that "Title VII's

3    prohibition on sex discrimination encompasses discrimination between men and women but does

4    not encompass discrimination based on gender identity *per se*, including transgender status."[11]

5                    **4.   The Complaint Does Not Allege Gender Stereotyping.**

6            The Complaint includes the word "stereotypes" because Plaintiffs presumably intend to

7    argue that they can state a claim based upon a gender stereotyping theory.  (Complaint, ¶¶ 69, 81,

8    92 ("because medical transition from one sex to another inherently violates sex stereotypes,

9    denying coverage for such health care constitutes impermissible discrimination based on gender

10   nonconformity.").  In *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1998), the Supreme Court held

11   that Title VII prohibits discrimination based on the failure to conform to socially-constructed

12   gender expectations.  However, Plaintiffs' allegations are, at most, legal conclusions that should

13   be disregarded by the Court.  As an initial matter, Congress did not incorporate Title VII into the

14   ACA.[12]  In addition, Plaintiffs do not and cannot allege gender stereotyping because a health

15   coverage exclusion does not establish the elements of gender stereotyping claim.  Such

16   allegations do not show that Plaintiffs were discriminated against because of the way they looked,

17   spoke, or acted.

18           To state a cognizable sex stereotyping discrimination claim, a plaintiff must allege that he

19   did not conform to his harasser's vision of how a man or woman should look, speak, and act.

20   *Johnston*, 97 F. Supp. 3d at 680.  The Ninth Circuit, relying on *Price Waterhouse*, has recognized

21   _____

22   [10] Although the preamble to the ACA Regulations permitted a private right of action for disparate
     impact discrimination, those regulations have been enjoined precisely because they impermissibly
23   expand the scope of a congressional statute (albeit in the context of expanding the definition of
     sex discrimination).  *See Franciscan All., Inc.*, 227 F. Supp. 3d at 695.

24   [11] On October 4, 2017, the Office of the Attorney General issued its Memorandum to all United
     States Attorneys and Heads of Department Components regarding "Revised Treatment of
25   Transgender Employment Discrimination Claims Under Title VII of the Civil Rights Act of
     1964."  *See* https://www.justice.gov/ag/page/file/1006981/download.   RJN, Ex. 2.

26   [12] A claim for gender stereotyping does not arise under the ACA.  *See Franciscan Al.*, 227 F.
     Supp. 3d at 689 n.28 ("*Price Waterhouse* dealt with the definition of 'sex' in the Title VII
27   context, not the incorporated statute at issue here: Title IX.  *Price Waterhouse* was decided in
     1989, twenty years before the ACA was enacted.  If Congress intended to prohibit the newly-
28   expanded version of sex discrimination that Defendants claim includes 'gender identity' it could
     have incorporated Title VII's prohibition of sex discrimination instead of Title IX.").

F.R.C.P. RULE 12(b)(6)                                12                    MANATT, PHELPS &
MOTION TO DISMISS                                                          PHILLIPS, LLP
No.  2:17–cv–01496–RSM                                                     11355 WEST OLYMPIC
                                                                          BLVD.

limited Title VII protections for transgender persons on the basis of sex stereotyping. *Schwenk v. Hartford*, 204 F.3d 1187, 1201-02 (9th Cir. 2000)("Discrimination because one fails to act in the way expected of a man or woman is forbidden under Title VII"); *see also Kastl v. Maricopa County Comm. College Dist.*, 325 Fed. Appx. 492, 493 (9th Cir. 2009) ("it is unlawful to discriminate against a transgender (or any other) person because he or she does not behave in accordance with an employer's expectations for men or women"). However, Plaintiffs have not alleged such a claim.

Here, Plaintiffs do not allege that Pax was discriminated against by PeaceHealth because of the way he looked, acted, or spoke. *See Johnston*, 97 F. Supp. 3d at 681. Plaintiffs only allege that Pax was denied a procedure that is not medically necessary under the very standards relied upon by Plaintiffs. "Such an allegation is insufficient to state a claim for discrimination under a sex stereotyping theory." *Id.* at 680.[13] Rather, a sex stereotyping claim requires allegations that the defendant treated the transgender individual differently because "he did not conform to his harasser's vision of how a man should look, speak, and act. . . . Sex stereotyping claims are based on behaviors, mannerisms, and appearances." *Johnston*, 97 F.Supp.3d at 680.

Plaintiffs' claim that the Plan's categorical exclusion of transgender care violates Section 1557 fails on its merits. *EEOC v. RG & GR Harris Funeral Homes, Inc.*, 100 F. Supp. 3d 594,

---

[13] Sex stereotyping cases involve allegations not present here of serious wrongful treatment based upon the way the plaintiff looked, acted, or spoke. *See, e.g., Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1049 (7th Cir. 2017) (transgender boy was not allowed to use boys' restroom, was forced to use either the girls' restroom or a gender neutral restroom and was told that he could only use the boys' restroom if he surgically transitioned to be a boy); *Glenn v. Brumby*, 663 F.3d 1312, 1320 (11th Cir. 2011) ("We conclude that a government agent violates the Equal Protection Clause's prohibition of sex-based discrimination when he or she fires a transgender or transsexual employee because of his or her gender non-conformity. . . . The first inquiry is whether [the defendant] acted on the basis of [the employee's] gender non-conformity."); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 572 (6th Cir. 2004) ("Having alleged that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind Defendants' actions, Smith has sufficiently pleaded claims of sex stereotyping and gender discrimination"); *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005) (affirming jury verdict finding transgender police officer demoted for failure to conform to sex stereotypes); *Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215-16 (1st Cir. 2000) (holding that transgender individual had stated a claim for sex discrimination under the Equal Credit Opportunity Act based on sex stereotyping) ; *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 2017 WL 4310756, at * 2 (S.D. Cal. 2017) (transgender boy committed suicide after hospital employees made statements such as "Honey, I would call you 'he,' but you are such a pretty girl")

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17–cv–01496–RSM

13

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1    598 (E.D. Mich. 2015) (allowing sex stereotyping claim but noting "[i]f the EEOC's complaint

2    had alleged that the Funeral Home fired Stephens based solely upon Stephens's status as a

3    transgender person, then this Court would agree with the Funeral Home that the EEOC's

4    complaint would fail to state a claim under Title VII"), *appeal from summary judgment order*

5    *filed* October 13, 2016; *Eure v. Sage Corp.*, 61 F. Supp. 3d 651, 661 (W.D. Tex. 2014) ("courts

6    have been reluctant to extend the sex stereotyping theory to cover circumstances where the

7    plaintiff is discriminated against because of the plaintiff's status as a transgender man or woman,

8    *without any additional evidence related to gender stereotype non-conformity*"; finding no

9    actionable discrimination where alleged discrimination was based on transgender status, not

10   stereotyping) (emphasis added); *Etsitty*, 502 F.3d at 1221 ("This court agrees with . . . the vast

11   majority of federal courts to have addressed this issue and concludes discrimination against a

12   transsexual based on the person's status as a transsexual is not discrimination because of sex

13   under Title VII."); *Johnson v. Fresh Mark, Inc.*, 337 F. Supp. 2d 996, 1000 (N.D. Ohio 2003)

14   (finding no discrimination where employer did not require transgender plaintiff to conform her

15   appearance to a particular gender stereotype), *aff'd*, 98 F. App'x 461 (6th Cir. 2004); *Creed v.*

16   *Family Express Corp.*, 2007 WL 2265630, at *3 (N.D. Ind. 2007) (dismissing plaintiff's

17   discrimination claims based on transgender status but allowing claims based on stereotyping).

**5.   Cheryl Enstad Lacks Standing Under Section 1557.**

19       Title IX, upon which Plaintiffs rely to bring a private right of action for sex discrimination

20   under Section 1557, precludes non-representative suits brought by parents because of conduct

21   relating to their child.  *See Prescott v. Rady Children's Hospital-San Diego*, 16-cv-02408-BTM-

22   JMA, 2017 WL 4310756 at * 4 (S.D. Cal. September 27, 2017), *citing Lopez v. Regents of Univ.*

23   *of Cal.*, 5 F. Supp. 3d 1106, 1114-15 (N.D. Cal. 2013) (holding that parents may not bring a Title

24   IX claim as individuals); *see also Tovar v. Essentia Health*, 857 F.3d 771, 775 (8th Cir. 2017)

25   (concluding that the plaintiff parent's "complaint on her own behalf about her employer's refusal

26   to cover treatment for her son [does not] fall within the protections of Title VII and the

27   [Minnesota Human Rights Act].")

28       Here, the claim relates solely to Pax Enstad's request for gender reassignment surgery.

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17–cv–01496–RSM

14

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1   Because Pax has his own claim, Cheryl Enstad's claim of sex discrimination is not in a

2   representative capacity and she is not an aggrieved party under Title IX or Section 1557.

3          **6. Disparate Impact Claims are Not Permitted Under Title IX.**

4          A claim under Title IX cannot be premised on the disparate impact a policy has with

5   respect to a protected group. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *cf. Jackson v.*

6   *Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497, 1504, 161 L. Ed. 2d 361 (2005)

7   ("Title IX implies a private right of action to enforce its prohibition on *intentional* sex

8   discrimination")(emphasis added).[14]  Indeed, on the sole occasion that a court was confronted

9   with a transgender discrimination claim (under Title VII) based on the exclusion of a category of

10  insurance coverage, the court noted skeptically "that it is not clear that the denial of benefits,

11  without more, constitutes an adverse employment action.  It is also not clear that Mario, as a

12  transsexual, is a member of a protected class [under Title VII]."  *Mario v. P & C Food Markets,*

13  *Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (adverse employment action requires a "materially adverse

14  change in the terms and conditions of employment").

15         Moreover, a facially neutral benefits policy, like PeaceHealth's Plan exclusion, cannot

16  give rise to a Title IX claim in the absence of allegations plausibly suggesting an intent to

17  discriminate.  *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) ("Wood does

18

_____

19  [14] Most courts apply the standard from the incorporated statute in a Section 1557 claim.
    "Congress's express incorporation of the enforcement mechanisms from those four federal civil
20  rights statutes, as well as its decision to define the protected classes by reference thereto,
    manifests an intent to import the various different standards and burdens of proof into a Section
21  1557 claim, depending upon the protected class at issue." *Se. Pennsylvania Transp. Auth. v.*
    *Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698–99 (E.D. Pa. 2015).  Nearly every court has followed
22  *Gilead*. *See also Callum v. CVS Health Corp.,* 137 F. Supp. 3d 817, 848 (D.S.C. 2015) (same);
    *Briscoe v. Health Care Service Corp.*, No. 16-CV-10294, 2017 WL 5989727, at *9 (N.D. Ill. Dec.
23  4, 2017) ("If Congress intended for a single standard to apply to all § 1557 discrimination claims,
    repeating the references to the civil-rights statutes and expressly incorporating their distinct
24  enforcement mechanisms would have been a pointless (and confusing) exercise."); *but see*
    *Rumble v. Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415, at *11 (D.
25  Minn. Mar. 16, 2015) (declining to announce a standard but stating "looking at Section 1557 and
    the Affordable Care Act as a whole, it appears that Congress intended to create a new, health-
26  specific, anti-discrimination cause of action that is subject to a singular standard, regardless of a
    plaintiff's protected class status.").  No court has followed *Rumble* on this point.  Ultimately, the
27  district court in *Rumble* never articulated such a standard, stayed the plaintiff's Section 1557
    claim after the nationwide injunction issued in *Franciscan*, and the case was settled and dismissed
28  six months later.  *See Rumble v. Fairview Health Servs.*, No. 14-CV-2037 (SRN/FLN), 2017 WL
    401940, at *4 (D. Minn. Jan. 30, 2017).

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17–cv–01496–RSM

15

1   not claim that the City adopted the surviving spouse benefit *because* it would benefit men more

2   often than women.  Her only allegation is that . . . the City was *aware* that male employees would

3   disproportionately benefit from the change") (emphasis added).  Here, there are no such

4   allegations.

5          Thus, an employer's awareness that a facially neutral policy may impact one group more

6   than another does not demonstrate intent to discriminate against that group.  *See Krauel v. Iowa*

7   *Methodist Med. Ctr.*, 95 F.3d 674, 680 (8th Cir. 1996) (employer's explanation of coverage

8   exclusion for infertility treatments—that "too many women of child-bearing age were employed

9   by [employer] and infertility treatments result in too many multiple births, thereby creating a

10  financial burden on the Plan"—were insufficient to show intent to discriminate).

11          **7.   Section 1557 Does Not Prohibit Categorical Exclusions, and the**
              **Enjoined ACA Regulations Would Not Have Been In Effect When Pax**
12            **Sought His Surgery.**

13          Nothing in Section 1557 prohibits an employer from making decisions as to what medical

14  services its plan will and will not cover if it does so for nondiscriminatory reasons.  Defendant's

15  Plan excludes coverage of services that are not medically necessary.[15] (*Id.*. ¶ 41; Ex. A, pp. 122,

16  130 (Allowable Expenses), 131 (Coordination of Healthcare); 135 (Medically Necessary)).

17          The enjoined and abandoned ACA Regulations would have prohibited the purported

18  "categorical coverage exclusion or limitation for all health services related to gender transition . .

19  . ."  45 C.F.R. § 92.207(b)(4)).  But the regulations were enjoined for, among other reasons,

20  exceeding the scope Section 1557.  *See Franciscan All.,* 227 F. Supp. 3d at 689.  Moreover, even

21  if the ACA Regulations were not enjoined, it would not help Plaintiffs because the ACA

22  Regulations were not in effect at the time the Plan denied Pax's request for surgery and Pax

23  

24  _____
[15] Medical efficacy—which is impacted by the age of the plaintiff—is an indicator of medical
     necessity; district courts acknowledge that "gender dysphoria works differently in children and
     adolescents than in adults. *Cruz v. Zucker*, 195 F. Supp. 3d 554, 563 (S.D.N.Y. 2016); *G. G. v.*
25   *Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 715 n.1 (4th Cir. 2016) ("[T]he WPATH Standards of
     Care do not permit sex reassignment surgery for persons who are under the legal age of
26   majority.") *vacated on other grounds by Gloucester Cnty Sch. Bd. v. G.G.*, 137 S. Ct. 1239
     (2017).  *See also* Linda A. Bergthold, *Medical Necessity: Do We Need It?*, 14 HEALTH
27   AFFAIRS 180, 181-82 (1995) (noting that the definition of "medical necessity" incorporates the
     medical community's view of medically appropriate treatment for particular diagnoses along with
28   an individual physician's judgment).

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS                                    16
No. 2:17–cv–01496–RSM

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

would not have received coverage even if there was no such exclusion in the Plan.

HHS promulgated the ACA Regulations on May 18, 2016, and they were enjoined on December 31, 2016.  81 Fed. Reg. 31468 (May 18, 2016) (codified at 45 C.F.R. § 92.4); *See Franciscan,* 227 F. Supp. 3d at 695.  However, the ACA Regulations did not require affected parties to make plan design changes until the first plan year beginning after January 1, 2017 and ending in December 31, 2017.[16]  *See* 81 Fed. Reg. 31376; 45 C.F.R. § 92.1 ("The effective date of this part shall be July 18, 2016, except to the extent that provisions of this part require changes to health insurance or group health plan benefit design (including covered benefits, benefits limitations or restrictions, and cost-sharing mechanisms, such as coinsurance, copayments, and deductibles), *such provisions, as they apply to health insurance or group health plan benefit design, have an applicability date of the first day of the first plan year (in the individual market, policy year) beginning on or after January 1, 2017.*"  (Emphasis added).

Plaintiffs' complaint about the Plan's exclusion of benefits for sex transformation treatment is one of "plan design."[17]  *See Burns v. Rice*, 39 F. Supp. 2d 1350, 1356 (M.D. Fla. 1998) (referring to "an employer's decisions regarding whether, how much, and to whom to provide benefits" as "'plan design'" decisions), *aff'd*, 210 F.3d 393 (11th Cir. 2000), *cert. denied,*

---

[16]The Preamble to the ACA Regulations, OCR stated:

> We are sensitive to the difficulties that making changes in the middle of a plan year could pose for some covered entities and are committed to working with covered entities to ensure that they can comply with the ACA Regulations without causing excessive disruption for the current plan year.  Consequently, *to the extent that provisions of this rule require changes to health insurance or group health plan benefit design (including covered benefits, benefits limitations or restrictions, and cost-sharing mechanisms, such as coinsurance, copayments, and deductibles), such provisions, as they apply to health insurance or group health plan benefit design, have an applicability date of the first day of the first plan year (in the individual market, policy year) beginning on or after January 1, 2017.*

81 Fed. Reg. at 31378 (emphasis added).

[17] After the nationwide injunction, some employers have reinstated the categorical exclusion since the regulations were enjoined.  *Cf.* WIS. DEP'T OF EMP. TR. FUNDS, Gender Reassignment Exclusion Reinstated (Feb. 2, 2017), http://etf.wi.gov/news/ht_20170201.htm [https://perma.cc/48SQ-9KAU]. (announcing that the state of Wisconsin is reinstating its categorical exclusion for its state employees, which it had previously removed based on the Section 1557 regulations.)

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17−cv−01496−RSM

17

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

531 U.S. 814 (2000).  The Complaint admits that Pax's request for chest reconstruction surgery was denied on September 7, 2016, and he proceeded with the surgery on September 20, 2016. (Complaint, ¶¶ 56 and 58.).  As of September 20, 2016, no law prohibited a categorical exclusion of gender reassignment services.

### D.     Plaintiffs' Claims Under the Washington Law Against Discrimination Fail.

#### 1.   Cheryl Enstad's Claim Fails.

##### a.     Cheryl Enstad's WLAD Claim Fails Because It is Based Upon An Alleged Denial of Coverage to Pax, Not Cheryl.

Cheryl's claim under WLAD for discrimination in the "terms or conditions of employment" fails because she was offered the same plan as all PeaceHealth employees.  RCW § 49.60.180(3).  Cheryl does not and cannot allege that the Plan is different for anyone else. Moreover, the exhibits attached to the Complaint establish that the procedure Pax desired was not medically necessary.  Plaintiffs admit that the WPATH Standards of Care "have been recognized as the authoritative standards." (Complaint, ¶ 29.)  Plaintiffs' further admit that the Regence Policy is "in accordance with the WPATH Standards of Care." (*Id.*, ¶¶ 44-45, Ex. B.)  And, Plaintiffs admit that Pax did not meet the requirements for "medically necessary" surgery in the WPATH Standards of Care adopted by Regence.  Plaintiffs admit that Pax was 16 years old at the time of the request, and therefore not "at least 18 years" old.  (Complaint, ¶ 53; Ex. B, p. 3, II(A)(1).)  Moreover, the Complaint does not allege that Pax met at least two of the other requirements including "documentation of continuous hormonal therapy for at least 12 months" and "twelve months of living in a gender role that is congruent with the patient's gender identity." (*Id.*, Ex. B, p. 3, II(A)(4) and (5).)  Based upon the facts and admissions plead by Plaintiffs as well as the documents attached to the Complaint, Pax did not even meet the standards that Plaintiffs contend apply.

Moreover, the WLAD does not permit employment discrimination claims based upon an employee's relationship with a transgendered person. *Cf. Sedlacek,* 145 Wash. 2d at 392 ("neither the legislative, executive, nor judicial branch of government in Washington has adopted a public policy against discrimination based on an able-bodied person's association with or

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No.  2:17−cv−01496−RSM

18

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

1    relation to a disabled person"). In *Sedlacek*, a disabled man's wife asserted claims under WLAD

2    alleging she was discriminated against based upon her husband's disability. *Id.* at 382-83. The

3    Washington Supreme Court rejected the claim based upon the WLAD regulations promulgated by

4    the Washington Human Rights Commission, which it found limited such claims only to disabled

5    persons themselves. *Id.* at 391-92.

6            Here, the applicable regulations similarly require an employment discrimination claim

7    under WLAD to be based upon the *employee's* sexual orientation. Wash. Admin. Code §§ 162-

8    32-010 ("This chapter interprets and implements the sexual orientation and gender expression and

9    gender identity discrimination protections of RCW 49.60.030, 49.60.180, and 49.60.215 and

10   provides guidance regarding certain specific forms of sexual orientation and gender expression

11   and gender identity discrimination."); 162-32-030 ("Employee benefits provided in whole or in

12   part by an employer must be consistent between all employees and equal for all employees,

13   regardless of *the employee's* sexual orientation or gender expression or gender identity."

14   (Emphasis added); *Galbraith v. TAPCO Credit Union*, 88 Wn. App. 939, 953 (1997) ("causes of

15   action under WLAD can be sustained only by plaintiffs who fall within the definition of persons

16   protected under RCW 49.60"); *see also Tovar*, 857 F.3d at 775; *Hoe Xuan Nguyen v. ING Fin.

17   *Advisers LLC*, No. C04-1310RSM, 2006 WL 1075216, at *9 (W.D. Wn. Apr. 21, 2006)

18   (Washington's WLAD "law largely parallels federal law under Title VII"), *aff'd sub nom. Hoe

19   *Xuan Nguyen v. N. Life Ins.*, 234 F. App'x 526 (9th Cir. 2007). Cheryl has no standing to assert a

20   WLAD employment claim based upon the fact that her son is transgender.[18]

21           The Complaint alleges that PeaceHealth failed to cover gender reassignment surgery for

22   Pax Enstad, not Cheryl, who does not personally seek such treatment. (*See, e.g.,* Complaint, ¶

23   10.) Cheryl cannot prove such an employment discrimination claim because she does not allege

24   that she has a gender identity disorder, or that PeaceHealth took any action against *her* because of

25   *her* protected status. *See Tovar,* 857 F.3d at 775 (affirming district court decision "that Tovar's

26   ─────────────────────
     [18] To the extent Cheryl purports to allege a "sex" discrimination claim, it too fails. Under,
     WLAD "'Sex' means gender." RCW § 49.060.040(25). However, Cheryl does not allege that
27   PeaceHealth discriminated against her because she is a woman or because Pax is a boy. Rather,
     Cheryl's claim is based upon Pax's "sexual orientation," which is defined by the WLAD to
28   include "gender expression or identity." RCW § 49.060.040(26).

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS                                    19
No. 2:17–cv–01496–RSM

son was the real "person aggrieved" by Essentia's actions, not Tovar.").  Pax cannot bring such a claim because he is not an employee.

b.    **PeaceHealth is Exempt Under WLAD as a Religious Organization.**

WLAD does not apply to PeaceHealth as an employer.  The definition of employer as defined by WLAD "does not include any religious or sectarian organization not organized for private profit."  RCW 49.60.040(11).[19]  The Complaint admits that PeaceHealth is a non-profit, "Catholic healthcare organization."  (Complaint, ¶¶ 2, 24.)  PeaceHealth's website describes its Catholic identity: "Founded by the Sisters of St. Joseph of Peace in 1890, PeaceHealth is a Catholic Healthcare Ministry."[20]

In *Ockletree v. Franciscan Health System*, 179 Wn. 2d 769 (2014), the Washington Supreme Court issued a 4-4-1 opinion that affirmed the constitutionality of the religious nonprofit exemption.  *Id.* at 805.  However, four justices held that the exemption is unconstitutional as applied to discrimination claims "unrelated to an employer's religious purpose, practice, or activity," and a fifth justice held the exemption "depends entirely on whether the employee's job responsibilities relate to the organization's religious practices."  *Id.* at 789 and 806.  Ockletree was a security guard employed by defendant.  *Id.* at 773.  After Ockletree suffered a stroke that impaired his nondominant arm, the defendant determined he could not perform the "essential functions of his job with or without accommodation, and terminated his employment."  Associate Chief Justice Johnson's opinion, joined by three other justices, expressly recognized that the exemption was necessary to protect religious employers from gender identity claims.  *Id.* at 785 (noting need for religious exemption because, among other things, WLAD includes gender identity and sexual orientation claims).  Justice Wiggins, writing alone, concurred.  "It was reasonable for the legislature to exempt religious nonprofit organizations from the definition of

---

[19] "Religious or sectarian organization" is nowhere defined in  RCW 49.60. But statutes are to be construed according to ordinary and common meanings; absurd consequences are to be avoided. *Yakima First Baptist Homes, Inc. v. Gray*, 82 Wn.2d 295, 299-300 (1973). *Donelson v. Providence Health & Servs. - Wn.*, 823 F. Supp. 2d 1179, 1186 (E.D. Wn. 2011) ("What constitutes a religious organization is not defined in the WLAD . . . case law instead directs Courts to examine the "entire factual context of the case, including the stated purpose of the [organization].")
[20] https://www.peacehealth.org/our-catholic-identity.

1  'employer' in order to promote two goals: avoiding excessive entanglement with religious

2  doctrines and practices and facilitating the free exercise of religion guaranteed by our Washington

3  Constitution." *Id.* at 806.

4        *Okletree* is of no help to Plaintiffs.  Although the majority of justices rejected a *blanket*

5  exemption, under *Okletree* the exemption nonetheless applies where there is a relationship

6  between the alleged discrimination and the religious nonprofit employer's religious beliefs.  Here,

7  the Plaintiffs admit that such link exists when they allege that PeaceHealth is a Catholic

8  organization and that the exclusion is "based on [PeaceHealth's] moral disapproval of . . . gender

9  transition." (Complaint, ¶ 82).  That is precisely the connection identified in *Ockletree*; like the

10  exemption in Title IX, the WLAD exemption was enacted to ensure Courts avoided excessive

11  entanglement in situations where a religious employer's policy relates to religious issues.

12        The question of whether a party is a religious organization may be resolved as a matter of

13  law.  *See Farnam v CRISTA Ministries*, 116 Wn.2d 659, 678, 807 P.2d 830 (1991); *Hazen v.*

14  *Catholic Credit Union*, 37 Wn. App. 502, 503, 681 P.2d 856 (1984).  Here, Plaintiffs admit that

15  PeaceHealth is Catholic, and other courts have already found that PeaceHealth satisfies the

16  exemption requirements. *See Mills v. PeaceHealth*, 31 F.Supp.3d 1099, 1104 n.4, 1105 (D. Or.

17  2014) (describing employer PeaceHealth as "a nonprofit catholic health care provider" and

18  "PeaceHealth Mission Statement" as "We carry on the healing mission of Jesus Christ by

19  promoting personal and community health, relieving pain and suffering, and treating each person

20  in a loving and caring way.").

21        Based upon the pled facts, PeaceHealth falls squarely within the exemption to WLAD.

22              **2.  Pax's WLAD Claim Fails Because He Fails to Allege Conduct**
                      **Governed by WLAD.**

23        Pax's WLAD claim fails because he does not allege conduct governed by the law.

24  In *Matter v. Washington Dep't of Corr.*, No. 13-CV-05213 BJR-KLS, 2014 WL 4449925,

25  at *6 (W.D. Wn. Sept. 10, 2014), the District Court held that the "WLAD does not present

26  a free standing claim for allegations of discrimination. In order to have a WLAD claim,

27  the individual must allege an unfair practice with respect to credit transactions, insurance

28

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No.  2:17−cv−01496−RSM                        21                    MANATT, PHELPS &
                                                                   PHILLIPS, LLP
                                                                 11355 WEST OLYMPIC
                                                                        BLVD.

1    transactions, employers, labor unions or employment agencies. See RCW 49.60.175

2    through RCW 49.60.200." *Id.*  Similarly, the District Court noted that "[a]n individual

3    also has a claim under WLAD for unfair practices with the respect to real estate

4    transactions. See RCW 49.60.222 through RCW 49.60.227.  In addition, an individual

5    may make a claim of unfair practice related to a place of public resort, accommodation,

6    assemblage, amusement for discrimination regarding the use of trained dog guides or

7    service animals. See RCW 49.60.215." *Id.*  Here, Pax does not allege a claim with respect

8    to any of these regulated subject matters.  Therefore, Pax has failed to state a claim under

9    the WLAD.  *See Id.* at * 7 (dismissing Matter's WLAD claim because "none of [his]

10   allegations falls within any" provision of WLAD).[21]

11         The Complaint attempts to plead that Pax is a beneficiary of an insurance plan.

12   (Complaint, ¶¶94-95.)  However, the Plan is a self-funded church plan, exempt from

13   ERISA, and not governed by Washington state insurance laws.  (Complaint, ¶ 40; Ex. A,

14   p. 9; 29 U.S.C. §§ 1002(33) (church plan definition) and 1003(b)(2) (church plan

15   exemption)); *See Bordeaux, Inc. v. Am. Safety Ins. Co.*, 145 Wn. App. 687, 695 (2008)

16   ("Self-insurance does not constitute insurance in any traditional form . . . in a self-

17   insurance situation there is no shifting of the risk from the individual person or company

18   to a larger group.") (internal quotes omitted); *compare* Wn. Rev. Code Ann. § 48.01.040

19   (West) ("Insurance is a contract whereby one undertakes to indemnify another or pay a

20   specified amount upon determinable contingencies.").  Although Plaintiffs' cite to the

21   Washington State Office of the Insurance Commissioner's website for the proposition that

22   categorical exclusions for transition related care violate the WLAD, the very same website

23   makes clear: "*Self-funded plans are not subject to Washington state insurance laws.*"[22]

24   _____

25   [21] In its "The Rights of Transgender People in Washington State," published in May 2016 before
     the ACA Regulations were enjoined, the ACLU acknowledged three points fatal to Plaintiffs
26   WLAD claims.  https://www.aclu-wa.org/docs/rights-transgender-people-washington-state.  First,
     WLAD is limited in scope.  (Page 2.)  Second, protection under WLAD is limited to transgender
27   individuals, and not those associated with them.  (Page 3.)  Third, self-funded plans may exclude
     coverage for transgender-specific care.  (Page 12.)
28   [22] *See https://www.insurance.wa.gov/who-contact-issues-your-employer-health-plan* (emphasis
     added).  RJN, Ex. 3.

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17–cv–01496–RSM                                    22                          MANATT, PHELPS &
                                                                                     PHILLIPS, LLP
                                                                                     11355 WEST OLYMPIC
                                                                                     BLVD.

1    Pax also alleges that WLAD applies to cases "including the making or

2  performance of a contract."  (Complaint, ¶ 89 *citing Marquis v. City of Spokane*, 130

3  Wn.2d 97, 112-13 (Wn. 1996).  However, in *Marquis* the Washington Supreme Court

4  expressly rejected the Court of Appeals' reliance on federal law to broadly apply WLAD

5  to the making of contracts.  *Marquis*, 130 Wn. 2d at 112.  Thus, the Washington Supreme

6  Court held that "RCW 49.60.030(1) can be interpreted to include a civil right of

7  independent contractors to be free of unlawful discrimination in the making and

8  performance of contracts for personal services."  Plaintiffs do not allege a contract for

9  personal services, and thus *Marquis* is of no help to Pax.

10    Pax's allegations of discrimination also fail because he admits that he did not meet the

11  requirements for the surgery.  As discussed above, Exhibits B and C to the Complaint clearly

12  state that gender reassignment surgery is not medically necessary unless the patient is at least 18

13  years old and meets other qualifications, which Pax also did not meet.  He does not allege that he

14  provided "documentation of continuous hormonal therapy for at least 12 months," or that he spent

15  12 months living in the gender role congruent with his gender identity.  Accordingly, the exhibits

16  to the Complaint confirms that PeaceHealth would have taken the "same action" even absent a

17  categorical exclusion because Pax did not meet the clinical qualifications for the surgery.

18  *Hegwine v. Longview Fibre Co*., 162 Wn. 2d 340, 359-60 (2007).

19  **IV.    CONCLUSION**

20    Plaintiffs' complaint fails to allege any actionable claim under state or federal law.  The

21  deficiencies cannot be cured by amendment, and the complaint should be dismissed with

22  prejudice.

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.

| | |
|---|---|
| 1 | Dated:    January 8, 2018 |
| 2 | |

MANATT, PHELPS & PHILLIPS
DAVIS WRIGHT TREMAINE, LLP


By:  /s/ Barry S. Landsberg
           Barry S. Landsberg
           *Attorneys for Defendant*
           PEACEHEALTH
MANATT, PHELPS & PHILLIPS, LLP
BARRY S. LANDSBERG (admitted *pro hac vice*)
E-mail:  blandsberg@manatt.com
HARVEY L. ROCHMAN (admitted *pro hac vice*)
E-mail:  hrochman@manatt.com
CRAIG S. RUTENBERG (admitted *pro hac vice*)
E-mail:  crutenberg@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

DAVIS WRIGHT TREMAINE LLP
HARRY J.F. KORRELL (WA Bar. No. 23173)
Email:  harrykorrell@dwt.com
JOSEPH P. HOAG (WA Bar No. 41971)
Email:  josephhoag@dwt.com
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone:  (206) 757-8080
Facsimile:  (206) 757-7080

319680863.2

F.R.C.P. RULE 12(b)(6)
MOTION TO DISMISS
No. 2:17–cv–01496–RSM

24

MANATT, PHELPS &
PHILLIPS, LLP
11355 WEST OLYMPIC
BLVD.